UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                                                           Case No. 15-80266-WRS
                                                                                                Chapter 13
LATEEFAH MUHAMMAD,

    Debtor

## MEMORANDUM DECISION

### I. FACTS

This Chapter 13 case came before the Court for an evidentiary hearing on the Debtor's Motion to Alter and Amend on May 13, 2015. (Doc. 21). The Debtor was present in person and by counsel Charles M. Ingrum, Jr. The Chapter 13 Trustee was present by counsel Sabrina McKinney. Tuskegee Federal Credit Union was present by counsel Kristen Abbott. For the reasons set forth below, the motion is DENIED.

The Debtor is Lateefah Muhammad, a practicing lawyer with an office in Tuskegee, Alabama. This case began when Muhammad filed a petition under Chapter 13 of the Bankruptcy Code on February 27, 2015. (Doc. 1). Muhammad has two prior cases. Her first case, also a Chapter 13, was filed on January 17, 2001. (Case No. 01-332). The first case was dismissed, without a plan having been confirmed, on June 27, 2001. (01-332, Doc. 28). The Court dismissed the first case with a 180-day injunction against refiling. (01-332, Doc. 28). Muhammad moved to reinstate the first case, and that motion was denied. (01-332, Docs. 29, 38).

Muhammad filed a second Chapter 13 petition on January 11, 2012. (12-80028, Doc. 1). In her Chapter 13 Plan, Muhammad admitted that she was $10,000 in arrears on her mortgage to

Tuskegee Federal. Her plan was to cure the delinquency over the life of the plan and maintain current monthly payments. (12-80028, Doc. 2). The monthly cure payment was $352.00 and her regular monthly maintenance payment was $694.00. On May 16, 2012, the Court confirmed Muhammad's Plan. (12-80028, Doc. 24).

On November 6, 2012, the Trustee filed his first motion to dismiss, in the second case, alleging that Muhammad had defaulted on her obligations to make plan payments. (12-80028, Doc. 26). Muhammad filed a response admitting the default and noted that some recent payments had been made. (12-80028, Doc. 27). Based upon Muhammad's promise to make payments in the future, the Trustee withdrew his motion to dismiss. (12-80028, Doc. 29).

On June 16, 2013, the Trustee filed a second motion to dismiss in the second case. (12-80028, Doc. 42). The Trustee's second motion recites that Muhammad had made only three monthly payments in the preceding six months. Muhammad responded, admitting the default, tendering two delinquent payments and promising to do better in the future. (12-80028, Doc. 43). The Trustee again withdrew his motion. (12-80028, Doc. 53).

On October 16, 2014, Tuskegee Federal filed a Motion for Relief from the Automatic Stay alleging that Muhammad had defaulted on her obligation to make the regular monthly mortgage payments, or "maintenance" payments during the pendency of the second case. (Doc. 59). Tuskegee Federal settled its motion with a consent order which was entered on November

26, 2014. (12-80028, Doc. 66). This consent order–known locally as a Hoggle[1] Order–is notable in that the mortgage delinquency had grown to almost $15,000.

On December 5, 2014, the Trustee filed his third motion to dismiss in the second case. (12-80028, Doc. 68). The Trustee's motion indicates that Muhammad had made only half of the payments coming due in the preceding six months. On January 20, 2015, the Court granted the Trustee's motion to dismiss. (12-80028, Doc. 74). Also of interest, on January 7, 2015, Tuskegee Federal gave notice that Muhammad had not made either her November or December 2014, mortgage payments. (12-80028, Doc. 72).

On February 27, 2015, Muhammad filed her third Chapter 13 petition, initiating this case. (Doc. 1). On March 11, 2015, twelve days later, Muhammad filed a motion to extend the automatic stay pursuant to 11 U.S.C. § 362(c)(3).[2] (Doc. 16). The Court immediately set Muhammad's motion for hearing on March 19, 2015. (Doc. 17). Muhammad ran for District

---

[1] These orders are named for the case of In re Hoggle, 12 F.3d 1008 (11th Cir. 1994). Under Chapter 13 of the Bankruptcy Code, a debtor may cure a mortgage delinquency and maintain payments under a Chapter 13 Plan. 11 U.S.C. § 1322(b)(5). This cure-and-maintain provision permits a homeowner to stave off foreclosure and catch up his mortgage within a reasonable amount of time. Prior to Hoggle, lower courts were split on the question of whether the "cure" could apply to delinquencies occurring after the date of the Chapter 13 petition. In Hoggle, the Eleventh Circuit held that a Bankruptcy Court had discretion to allow a debtor to cure a post-petition mortgage delinquency. That the Eleventh Circuit ruled that post-petition delinquencies could be cured in a Plan, does not mean that it is always a good idea. A post-petition default, even if cured with a Hoggle order, raises a red flag–indicating the debtor may not have the ability to both pay his mortgage and the Chapter 13 Trustee.

[2] The motion must be filed, notice given and the hearing completed within 30 days of the date of the petition. 11 U.S.C. § 362(c)(3)(B). As Muhammad waited 12 days before filing her motion, she put the Court and Tuskegee Federal in a bind to complete her hearing within the remaining 18 days. In general, this Court does not consider a motion to extend the automatic stay filed more than 30 days after the date of the petition–absent extraordinary circumstances. In re Berry, 340 B.R. 636 (Bankr. M.D. Ala. 2006). Given the constraint of § 362(c)(3)(B), it is a poor practice not to file the motion immediately upon filing the petition.

Judge in Macon County in 2014. She argues that her unsuccessful run for office distracted her from practicing law, resulting in lower income and an inability to fund her Chapter 13 Plan. The Court notes that Muhammad's inability to meet her financial obligations both antedated and postdated her run for office. Therefore, it does not appear that Muhammad's run for office was a significant factor in her financial difficulties. After a hearing, the Court denied Muhammad's motion to extend the automatic stay, finding that she had failed to carry her burden of proof. (Doc. 20).

Muhammad promptly moved to alter and amend the Court's March 13, 2015 order denying her motion to extend the automatic stay. (Doc. 21). An evidentiary hearing was held on May 13, 2015, in Opelika, Alabama. The Court heard testimony from the President of Tuskegee Federal advising the Court that Muhammad's mortgage delinquency had grown to more than $18,000. Muhammad testified, disputing almost everything. She had no evidence showing the what she believed was the true status of her mortgage. She stated that Tuskegee Federal had given inconsistent answers on previous occasions regarding her mortgage balance. Muhammad did not provide the Court with proof of payments nor did she provide an analysis as to what she contends her mortgage balance or delinquency to be. The May 13, 2015 hearing was nothing more than a rehash of what had been presented to the Court in past: excuses, blanket denials, and promises of future performance.

## II. LAW

### A. Jurisdiction

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). This is a final order.

### B. Motions to Extend the Stay–Burden of Proof

Muhammad's motion to extend the automatic stay is governed by 11 U.S.C. § 362(c)(3)(B). In general, when a petition in bankruptcy is filed, a stay is entered by operation of law, which prevents creditors from taking action to collect debts. § 362(a). There is an exception in the case where a debtor has had a prior bankruptcy case pending within the preceding one year; in those cases, the automatic stay terminates 30 days after the date of the petition in the latter case. § 362(c)(3)(A); In re Berry, 340 B.R. 636, 637 (Bankr. M.D. Ala. 2006). The debtor may move the court to extend the automatic stay:

> [o]n the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular case as to any or all creditors (subject to such conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed.

§ 362(c)(3)(B). Thus, the motion must be filed, notice given, and the hearing completed before the expiration of the 30-day period. § 362(c)(3)(B); In re Montoya, 333 B.R. 449, 452 (Bankr. D. Utah 2005). The debtor has the burden of proof to show that she has filed her petition in good

5

faith.  In re Williams, 410 B.R. 491, 493-94 (Bankr. S.D. Tex. 2009); In re Garrett, 357 B.R. 128, 130 (Bankr. C.D. Ill. 2006);  In re Montoya, 342 B.R. 312, 315 (Bankr. S.D. Cal. 2006).

## C.  Motions to Extend the Stay–Presumption Not in Good Faith

While the burden of proof is always on the debtor as moving party, in some cases a debtor's filing is presumed not to be in good faith and the presumption can be rebutted only on a showing of "clear and convincing" evidence.  § 362(c)(3)(C).  There are three provisions which are pertinent here.  First, Muhammad failed to provide adequate protection in the way of monthly maintenance payments on her mortgage in her second case.  § 362(c)(3)(C)(i)(II)(bb).  Second, she failed to perform under her plan.  § 362(c)(3)(C)(i)(II)(cc).  Third, she has failed to demonstrate a "substantial change" in her financial affairs.  § 362(c)(3)(C)(i)(III).  When, the Court makes a finding under any of these three provisions, the Debtor must rebut the presumption with clear and convincing evidence.

### 1.  The failure to provide adequate protection

When the Court orders a debtor to provide a creditor with adequate protection and the debtor fails to do so, the presumption that the subsequent bankruptcy filing is not in good faith arises.  § 362(c)(3)(C)(i)(II)(bb).   In Muhammad's previous Chapter 13 case, she sought to cure a $10,000 mortgage delinquency and maintain current payments.  Muhammad failed to make post-petition mortgage payments (the maintenance payments) and as a result, Tuskegee Federal filed a motion for relief from the automatic stay.  (12-80028, Doc. 46).  Muhammad's mortgage delinquency was resolved by way of an agreed order entered November 26, 2014.  (12-80028,

6

Doc. 66). Under the terms of that order, the mortgage delinquency was fixed at $14,963.37, which was to be cured at a rate of $400.00 per month, in addition to the monthly maintenance payment of $694. The agreed order also contained a provision that the automatic stay would terminate 20 days after notice of any future default.[3]

Adequate protection is a defined term under the Bankruptcy Code. § 361. In most consumer cases, adequate protection is provided by making periodic payments. § 361(1). In this case, Muhammad was to make both her regular monthly mortgage payment, the maintenance payment, and an additional payment–$400 per month under the November 26, 2014 order–called the "cure" payment. Where, as here, a debtor failed to make payments on time, she failed to provide adequate protection. This failure gave rise to a presumption that the petition in this case was not filed in good faith.

## 2. The failure to perform under the plan

At the time Muhammad's prior case was dismissed, she had made only 70% of payments called for by her Chapter 13 Plan. (12-80028, Doc. 73). Moreover, the Chapter 13 Trustee filed a total of three motions to dismiss, all for the failure to make plan payments, in her prior case. When the prior case was dismissed for the failure to perform under the plan, the presumption that the new case was not filed in good faith arose. § 362(c)(3)(C)(i)(II)(cc). In re Paul, Case No. 10-10222, 2010 WL 3811955 (Bankr. N.D. Tex. Sept. 17, 2010); In re Mark, 336 B.R. 260, 263-64 (Bankr. D. Md. 2006); In re Galanis, 334 B.R. 685, 691 (Bankr. D. Utah 2005).

---

[3] These provisions are sometimes called "drop dead" provisions as the automatic stay terminates after notice, without further proceedings in court.

### 3. No substantial change in financial affairs

The presumption that a case has not been filed in good faith arises when "there has not been a substantial change in the financial . . . affairs of the debtor since the dismissal of the next most previous case . . . or any other reason to conclude that the later case will be concluded . . . with a case under chapter . . . 13, with a confirmed plan that will be fully performed." § 362(c)(3)(C)(i)(III); In re Washington, 443 B.R. 389, 392 (Bankr. D.S.C. 2011); In re Galanis, 334 B.R. 685, 691 (Bankr. D. Utah 2005).

When Muhammad's motion to extend the stay was argued she had nothing to offer except that she was no longer running for elective office and therefore had more time to practice law. As Muhammad is self-employed and her prior case was dismissed because she was not making her payments to Tuskegee Federal or the Trustee, the Court was looking for evidence that she will be able to make payments in the future.

When a debtor is a wage earner, she is required to file copies of her pay stubs showing the amount of her income. 11 U.S.C. § 521(a)(1)(B)(iv). This gives the Court and the Trustee a pretty good starting point to see if a debtor will be able to fund a Chapter 13 Plan. When a debtor is self-employed, the task is more difficult–meaning that the burden on the debtor is greater–to show that she will be able to succeed in the future where she has failed in the past. The first thing the Court looks for when making such a determination in the case of a self-employed professional is actual billing and actual revenue figures.

What were Muhammad's monthly billings the past 6 or 12 months and what were her collections over the same period? Muhammad failed to provide any hard proof of these figures.

8

Instead, she produced nothing but a budget for the future, which does not appear to be based upon anything but hope. (Doc. 1, Sch. I, J); (Doc. 5). As Muhammad failed to offer any hard evidence that there has been a significant change in her financial circumstances since the prior case was dismissed, the presumption that this case was not filed in good faith arose.

**D. Good Faith**

1. Totality of the circumstances

As the Court here concluded that the presumption arose that this case was not filed in good faith, Muhammad had the burden to rebut the presumption with clear and convincing evidence. The term "good faith" is not defined in the Bankruptcy Code. Courts that have considered this question have held that this is a "totality of the circumstances" test. In re Castaneda, 342 B.R. 90, 96 (Bankr. S.D. Cal. 2006); In re Tomasini, 339 B.R. 773, 779 (Bankr. D. Utah); In re Havner, 336 B.R. 98, 103 (Bankr. M.D.N.C. 2006); In re Charles, 334 B.R. 207, 217 (Bankr. S.D. Tex. 2005); In re Montoya, 333 B.R. 449, 458 (Bankr. D. Utah 2005).

2. Clear and convincing evidence

Clear and convincing is a heightened evidentiary standard, meaning that Muhammad had to prove her good faith with more than a mere preponderance of the evidence. Such evidence "produces in the mind of the trier of fact an abiding conviction that the truth of the factual contentions is highly probable." In re Ferguson, 376 B.R. 109, 118 (Bankr. E.D. Pa. 2007). Another formulation is that it is "evidence so clear, direct and weighty and convincing as to enable the court to find the facts at issue without hesitancy." Id. (citing In re Ellis, 339 B.R. 136,

9

141-42 (Bankr. E.D. Pa. 2006)).  Thus, this Court used the "highly probable" standard.  See Colorado v. New Mexico, 467 U.S. 310, 315, 104 S.Ct. 2433, 2438 (1984).  In other words, to carry her burden, Muhammad had to submit sufficient evidence to convince this Court that it was "highly probable" that her case was filed in good faith.

### III.  APPLICATION OF THE LAW TO THE FACTS

In Part II above, the Court identified both the legal standard and the burden of proof for a motion to extend the automatic stay.  In this Part, the Court will review the facts of this case and explain why Muhammad did not meet her burden.  The Court considered three things in making this determination: (1) the Debtor's history of bankruptcy filings; (2) the Debtor's mortgage delinquency and its rate of growth; and (3) the lack of any change in the Debtor's financial circumstances.

#### A.  The Debtor's History of Bankruptcy Filings

As set forth in Part I above, Muhammad has two prior bankruptcy filings.  The first filing occurred January 17, 2001.  (Case No. 01-332).  That case was remarkable in that it was dismissed prior to confirmation and with a 180-day injunction against refiling.  Both of these facts were strong indicators of bad faith.  This was tempered by the length of time between the first filing, in 2001, and the second, in 2012.  Nevertheless, this 2001 filing, with a dismissal prior to confirmation and with an injunction against refiling, was an indicator of bad faith.

Muhammad's second Chapter 13 bankruptcy filing occurred January 11, 2012.  (12-80028, Doc. 1).  During the three years that the case was pending, the Chapter 13 Trustee filed

three separate motions to dismiss. (12-80028, Docs. 26, 42, 68). At the time Muhammad's second case was dismissed, she had staved off two prior motions to dismiss and two motions for relief from the automatic stay. The Trustee stated that she had made only 70% of the payments which had come due. (12-80028, Doc. 73). Muhammad's record of a bad faith bankruptcy filing in 2001 and her more recent bankruptcy case where she defaulted repeatedly prior to dismissal both weighed against a finding that this case was filed in good faith.

### B. The Debtor's History of Mortgage Delinquency

One of the primary purposes of Chapter 13 of the Bankruptcy Code is to permit debtors to cure mortgage delinquencies and keep their homes. The fact that a debtor files a petition in bankruptcy pursuant to Chapter 13 and has a mortgage delinquency does not, by itself, indicate bad faith. The problem arose here due to two things: first, the sheer amount of the delinquency and, second, the fact that it continued to grow, even while Muhammad was under the protection of the Bankruptcy Court. Muhammad's monthly mortgage payment was $694, yet her delinquency when she filed her last case was $10,000–an amount greater than 14 monthly payments. That Muhammad had gotten so far behind with her mortgage was troubling. In this Court's experience, when a consumer debtor's mortgage delinquency goes more than 12 months in default, she seldom is able to effect a cure.

Once Muhammad filed Case No. 12-80028 and confirmed her Plan, she should have been able to cure the delinquency. At that point, she had only to make her regular monthly mortgage

11

payment and her Chapter 13 Plan payment to the Trustee, and she would have been on her way. Instead, she continued to default on her mortgage. On November 26, 2014, she entered into an agreed order with her mortgage holder, fixing the mortgage delinquency at $14,963.37. (12-80028, Doc. 66). If a $10,000 delinquency was a red flag, a $15,000 delinquency–the last five thousand of which accrued during the pendency of the second bankruptcy case–was an air raid alarm. Even after Muhammad entered into the November 26, 2014 agreed order, she nevertheless defaulted on her November and December 2014 mortgage payments. (12-80028, Doc. 72). Thus, Muhammad had committed material defaults in both her Chapter 13 Plan payments and her regular monthly mortgage payments. The Court considered Muhammad's default in her mortgage payments in conjunction with her default on her Chapter 13 Plan payments. That she was unable to pay either, or that she was in default on both obligations simultaneously was a strong indicator that this case was not filed in good faith.

### C. There is No Material Change in the Muhammad's Circumstances

In Parts III(A) and (B) above, the Court was looking back at the Muahammad's history of dealing with the Court and her creditors. What a debtor has done in the past is usually a good indicator of what she will do in the future. Also, when looking backward, one has hard data–not just wishes and hopes. Perhaps the single most important factor in making the determination of whether a bankruptcy filing is in good faith is a prediction as to what will happen in the future. As the Debtor had recently failed to complete a Chapter 13 Plan, the Court looked to determine whether there is was any reason to think that another bankruptcy filing would be any different.

Most Chapter 13 cases involve wage earners. Indeed, Chapter 13 Plans were once referred to as wage-earner plans. Debtors are required to file copies of their paystubs for the last 60 days. § 521(a)(1)(B)(iv). These provide an excellent indicator as to whether the debtor has sufficient income to fund a Chapter 13 Plan. The problem is more difficult where, as here, the Debtor is self-employed. In this case, the Debtor did nothing more than provide an unsubstantiated budget. No figures as to billings or collections were provided. As the Debtor had the burden to show, by clear and convincing evidence, that her case was filed in good faith, her failure to support her contention necessarily resulted in a finding that she had failed to carry her burden.

### D. Muhammad has Failed to Carry Her Burden

To determine whether a bankruptcy case is filed in good faith, the Court considers the "totality of the circumstances." Muhammad had an old bankruptcy case from 2001 which was filed in bad faith. More recently, she accumulated an enormous mortgage delinquency that continues to grow. In her last Chapter 13 bankruptcy case, Muhammad defaulted repeatedly on her Chapter 13 Plan payments. Muhammad offered no evidence that the future would be any different. Muhammad failed to carry her burden to show that this case was filed in good faith.

### IV. MOTION TO ALTER AND AMEND

Muhammad also filed a Motion to Alter and Amend the Court's Order denying extension of the automatic stay. (Doc. 21). This motion is made pursuant to Rule 9023, Fed. R. Civ. P., which adopts Rule 59, Fed. R. Civ. P. A motion to alter and amend may be filed within 14 days

13

Case 15-80266   Doc 30   Filed 06/03/15   Entered 06/03/15 09:05:38   Desc Main
Document     Page 13 of 15

of entry of judgment. The Rule itself does not provide a standard; however, the usual formulation of the standard to be applied when deciding a motion to alter and amend is that such a motion may be granted on the following grounds:

1. An intervening change in the law,

2. Consideration of newly discovered evidence, or

3. To correct clear error or prevent manifest injustice.

Eglin Fed. Credit Union v. Horlacher (In re Horlacher), 389 B.R. 257, 261 (Bankr. N.D. Fla. 2008); see also Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007) (referring to a motion under Rule 59(e)).

Muhammad's Motion to Alter and Amend satisfies none of these grounds. She makes no argument that there is an intervening change in the law or that she has newly discovered evidence. Any argument to the effect that the Court has committed clear error is rejected. Moreover, any suggestion that a denial of Muhammad's motion would be a manifest injustice is frivolous. The simple truth of the matter is that Muhammad does not earn enough money to support herself, her husband, and pay the mortgage on her home. There were three motions to dismiss two motions for relief from the automatic stay filed in the prior Chapter 13 case. There is no reason to think that the result of this case would be any different. There is no reasonable hope that she will be able to cure a now–$18,000 delinquency on her home mortgage.

The Court is not unsympathetic to Muhammad's plight, but at some point the law must take its course. Tuskegee Federal was more than generous in not objecting to Muhammad's Plan in her prior case and it went the extra mile when it agreed to a "Hoggle" order. The Chapter 13 Trustee also went the extra mile as he withdrew two properly filed motions to dismiss in an effort

14

to give Muhammad a chance.  One can always file another motion, another case, or another objection.  At some point such actions become sanctionable.  Rule 9011, Fed. R. Bankr. P.  One might reasonably argue that the instant motion to alter and amend is sanctionable.  While the Court will not impose sanctions on Muhammad, or her lawyer, at this time, both are warned that any future filings will be carefully scrutinized.

### V.  CONCLUSION

The Debtor's Motion to Alter and Amend is DENIED.  Muhammad has offered no hard evidence to show that the outcome of this case will be any different from the outcome in the last.  She was self-employed while in the last case and her employment has not changed.  Muhammad did not provide any evidence as to billing or revenue figures.  All of the financial data provided is nothing more than numbers plucked out of the air and put down on paper.  Muhammad has failed to carry her burden, to prove by clear and convincing evidence, that this case was not filed in bad faith.  For this reason, her motion to alter and amend is denied.  The Court will enter judgment by way of a separate document.

Done this 2nd day of June, 2015.

United States Bankruptcy Judge

c: Lateefah Muhammad
   Charles M. Ingrum Jr.
   Curtis C. Reding, Trustee
   Kristin Abbott, Attorney for Tuskegee Federal Credit Union